UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

———————————————

ANNIE B. GREEN and
WYART W. GREEN,

        Plaintiffs,

v.

HOWMET CORPORATION
MUSKEGON COUNTY OPERATIONS
HOURLY EMPLOYEE'S PENSION
PLAN,

        Defendant.
_____/

Case No. 1:11-CV-444

HON. GORDON J. QUIST

## OPINION

Plaintiffs, Annie B. Green and Wyart W. Green[1], proceeding *pro se*, have sued Defendant, the Howmet Corporation Muskegon County Operations Hourly Employees' Pension Plan (the "Plan"), pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended, 29 U.S.C. § 1001, *et seq.* Plaintiff Annie B. Green, a former employee of Howmet Corporation ("Howmet"), is a participant in the Plan, and Plaintiff Wyart W. Green is apparently Annie's spouse and her designated beneficiary. As the Court understands it, Plaintiffs are seeking both disability retirement benefits and regular retirement benefits.

The Plan has moved for dismissal or summary judgment on the basis that Plaintiffs failed to exhaust their administrative remedies. For the reasons set forth below, the Court will grant the Plan's motion but, rather than dismiss Plaintiffs' claims, will stay the case to allow Plaintiffs to exhaust their administrative remedies and return to this Court for review in the event their claims for benefits are administratively denied.

---

[1] The docket report identifies Wyart W. Green as Wyatt W. Green. The Court will order the Clerk to correct the docket to properly identify Mr. Green as Wyart rather than Wyatt.

## BACKGROUND

Annie worked for Howmet as an hourly employee from February 13, 1973, until December 14, 1992, when she took disability leave. Annie never returned to work at Howmet. (Williams Aff. ¶ 6.) On November 1, 2005, Howmet informed Annie by letter that pursuant to a recently-adopted collective bargaining agreement, the company had implemented a new attendance policy that imposed a 60-month limit on leaves of absences, after which time employees would be terminated. (*Id.* ¶ 7; Administrative R. ("A.R.") at 001.)[2] Pursuant to this policy, Howmet terminated Annie's employment on February 10, 2006.

As a Howmet hourly employee, Annie was eligible for benefits under the Plan, which provides normal, early, and disability retirement pension benefits. (Plan at 7, Williams Aff. Ex. A; Summary Plan Description ("SPD") at 4-5, Williams Aff. Ex. B.) The Plan is administered by a six-member Board of Administration (the "Board"), three of whom are appointed by Howmet's Benefit Plan Committee and three of whom are appointed by the Union. (Plan at 28.) The Board is authorized to decide claims for retirement benefits, although the day-to-day administration is handled by Hewitt Associates LLC ("Hewitt"), a third-party administrator. (*Id.* at 29-30; Williams Aff. ¶ 6.) In order to apply for pension benefits, an employee must submit an application for benefits on an approved form. (SPD at 14.) In addition, an employee seeking disability retirement benefits must show that he or she is "totally and permanently disabled," meaning that: (1) the employee cannot perform any bargaining unit position at the employee's location; (2) the employee is not otherwise employed by the company or a subsidiary; and (3) a physician appointed by the Board determines that the employee's disability will be total and permanent for the rest of the employee's life. (*Id.* at 5.)

---

[2] The Plan has attached as Exhibit C to the affidavit of J. Michael Williams, Manager of Benefits Administration for Alcoa, documents comprising the administrative record for Annie's 2006 claim for disability retirement benefits. Alcoa, Inc. is the parent company of Howmet. (Williams Aff. ¶ 2.)

2

An employee may appeal a denial of benefits to the Pension Board of Administration. (*Id.* at 19.) In the case of a denial of disability retirement benefits, the employee must submit an appeal within 180 days of receiving notice that the claim has been denied. (*Id.*). The Summary Plan Description informs employees that "[i]f you have a claim for benefits that is denied or ignored, in whole or in part, you may file suit in a state or federal court after you have exhausted the appeal process as described [in the Summary Plan Description]." (*Id.* at 22.)

In February or March 2006, Annie applied for disability retirement benefits. In support of the application, Annie and her husband completed and submitted a Pension Election Authorization Form. (Williams. Aff. ¶ 15; A.R. at 08-010.) In addition, Annie submitted 16 pages of medical records, which included a Treating Physician Report that was mostly blank. (A.R. at 012-015.) The record also included a Functional Capacity Evaluation conducted on February 12, 2004, which found that Annie was not limited in 11 different functional areas. (A.R. at 027.) Howmet gave Annie an opportunity to submit additional information in support of her claim, but she indicated that the information she submitted "was all she had, and if it's not enough, then she would have to accept that." (A.R. at 028.) The Board considered and denied Annie's claim at its August 2006 meeting due to insufficient medical information showing that Annie was disabled. (A.R. at 029.)

On October 4, 2006, Hewitt notified Annie in writing that her claim was denied. The notice also advised Annie to consult the Summary Plan Description for information on appealing the denial. (A.R. at 032.) However, Annie did not file an appeal. (Williams Aff. ¶ 30.)

In November 2010, Annie contacted Hewitt to apply for regular retirement benefits. (*Id.* ¶ 34.) Hewitt told Annie to submit a new application, but Annie refused to complete a new application. Instead, she submitted her Pension Election Authorization Form from April 2006. (*Id.* ¶ 37.) On February 23, 2011, Annie made preliminary elections for regular retirement benefits. (*Id.* ¶ 38.) Shortly thereafter, Hewitt sent Annie a Pension Election Confirmation and Pension Election Authorization Form and advised her that she would have to sign and return both forms to begin the

3

benefits process. However, Annie did not sign and return the forms as Hewitt requested, and on April 8, 2011, Hewitt advised Annie that her request for regular retirement benefits had been cancelled because she had not submitted the required forms. (*Id.* ¶¶ 42, 43.) Hewitt also advised Annie that she would need to contact a Hewitt retirement specialist if she wanted to restart the retirement process. However, rather than restarting the process with Hewitt to obtain her retirement benefits, Annie filed the instant case.

## MOTION STANDARD

The Plan has filed a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) or, alternatively, for summary judgment pursuant to Fed. R. Civ. P. 56. Rule 12(d) provides that "[i]f, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d). Generally, notice of conversion to a motion for summary judgment is required where one party will be surprised by the proceedings. *Wysocki v. Int'l Bus. Mach. Corp.*, 607 F.3d 1102, 1104-05 (6th Cir. 2010). In this case, the Plan has moved for both dismissal and for summary judgment and has presented matters outside the pleadings, namely, the Williams affidavit and the documents contained in the Administrative Record. In their response, Plaintiffs have attached copies of documents that also cannot be considered part of the pleadings for purposes of Rule 12(b)(6). Because Plaintiffs themselves have submitted documents beyond the scope of the pleadings and had notice that the Plan seeks summary judgment as an alternative to dismissal, they will be neither surprised nor prejudiced by consideration of the Plan's motion and supporting documents under the summary judgment standard.

Summary judgment is proper where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are facts which are defined by substantive law and are necessary to apply the

4

law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986). A dispute is genuine if a reasonable jury could return judgment for the non-moving party. *Id.*

The court must draw all inferences in a light most favorable to the non-moving party, but may grant summary judgment when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Agristor Fin. Corp. v. Van Sickle*, 967 F.2d 233, 236 (6th Cir. 1992) (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 1356 (1986)).

## DISCUSSION

Because Plaintiffs seek benefits under an ERISA plan, their claim implicates the principal of exhaustion of administrative remedies. Although ERISA does not specifically contain an exhaustion requirement, the Sixth Circuit has held that "[t]he administrative scheme of ERISA requires a participant to exhaust his or her administrative remedies prior to commencing suit in federal court." *Miller v. Metro. Life Ins. Co.*, 925 F.2d 979, 986 (6th Cir. 1991) (citing 29 U.S.C. § 1133(2)). Exhaustion is excused "where resorting to the plan's administrative procedure would simply be futile or the remedy inadequate." *Fallick v. Nationwide Mut. Ins. Co.*, 162 F.3d 410, 418 n.4 (6th Cir. 1998). "The standard for adjudging futility of resorting to the administrative remedies provided by a plan is whether a clear and positive indication of futility can be made." *Id.* Exhaustion of administrative remedies serves:

(1) To help reduce the number of frivolous law-suits under ERISA.
(2) To promote the consistent treatment of claims for benefits.
(3) To provide a nonadversarial method of claims settlement.
(4) To minimize the costs of claims settlement for all concerned.
(5) To enhance the ability of trustees of benefit plans to expertly and efficiently manage their funds by preventing premature judicial intervention in their decision-making processes.
(6) To enhance the ability of trustees of benefit plans to correct their errors.
(7) To enhance the ability of trustees of benefit plans to interpret plan provisions.
(8) To help assemble a factual record which will assist a court in reviewing the fiduciaries' actions.

*Constantino v. TRW, Inc.* 13 F.3d 969, 975 (6th Cir. 1994).

Plaintiffs do not dispute that Annie did not appeal the Board's denial of her claim for disability retirement benefits, rendering her claim unexhausted. Nor do Plaintiffs argue that resort to the Plan's administrative procedure would be futile. With regard to Annie's claim for regular retirement benefits, it appears that Annie has not even taken the initial step of filing the required forms, even though the Plan states that Annie "can start receiving her deferred vested non-disability retirement benefit as soon as she completes and returns her application and Pension Election Authorization Form." (Williams Aff. ¶ 46.) Plaintiffs' only response is that defense counsel has not sent the required forms to Annie, but, as the Plan points out, Hewitt previously sent those forms to Annie. In addition, the Plan attached the forms to its reply brief, which it served on Plaintiffs.

Although the Plan requests that the Court dismiss Plaintiffs' amended complaint for failure to exhaust, in its discretion, the Court will stay the case for a period of 120 days to allow Annie an opportunity to exhaust her administrative remedies both with regard to her claim for disability retirement benefits and her claim for regular retirement benefits. *See Lindemann v. Mobile Oil Corp.*, 79 F.3d 647, 651 (7th Cir. 1996) (noting that a district court has discretion to dismiss or stay a case pending completion of administrative review). As to the latter claim, Annie need only furnish Hewitt signed copies of the required forms, which have already been furnished to Annie. In the event the Plan denies either claim, Annie may return to this Court for review of the denial pursuant to 29 U.S.C. § 1132(a)(1)(B).

## Conclusion

For the foregoing reasons, the Court will grant the Plan's motion for summary judgment based upon lack of exhaustion.

An Order consistent with this Opinion will be entered.


Dated: August 9, 2011                        /s/ Gordon J. Quist
                                             GORDON J. QUIST
                                             UNITED STATES DISTRICT JUDGE